**FILED**
**U.S. District Court**
**District of Kansas**
07/23/2026

**Clerk, U.S. District Court**
**By: SND Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

RYAN CHRISTOPHER CHEATHAM,

  **Plaintiff,**

  **v.**          **CASE NO. 26-3208-JWL**

JERRY BARTON, et al.,

  **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Ryan Christopher Cheatham is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

### I. Nature of the Matter before the Court

Plaintiff brings this civil rights action under 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"), his claims arise out of his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF") and his medical care at the Larned State Correctional Facility ("LSCF").[1]

Plaintiff has filed motions for leave to proceed in forma pauperis (Docs. 2, 6) and a Motion to Compel Kansas Department of Corrections/Central Inmate Banking to Produce Plaintiff's "Certified Bank Statement" (Doc. 5). The motion to produce asks, in the alternative, to allow his case to proceed. The Court is aware of delays in receiving account statements and therefore grants the motions for leave to proceed in forma pauperis. Because the Court is allowing this case to

---

[1] The name of the facility was changed on April 27, 2023, from Larned Correctional Mental Health Facility to the Larned State Correctional Facility. *See* https://www.doc.ks.gov/facilities/lcmhf/history (last visited July 21, 2026).

proceed, Plaintiff's motion to compel production of the statement is denied.  However, Plaintiff must continue his attempts to obtain an account statement for the appropriate six-month period, and he must submit the proper account statement as soon as he is able to do so, at which time an initial partial filing fee may be calculated and assessed.

Plaintiff claims that at LCF on March 13, 2025, he and inmate Taggart Lee were taken to the shower located in A4 cellhouse.  (Doc. 1, at 2.)  Plaintiff states that upon completion of a strip search, Plaintiff was taken out of the shower and began walking back to his cell—A4 122.  *Id*.  Plaintiff claims that Officer Barton slammed Plaintiff up against the wall "extremely hard."  *Id*.

Plaintiff claims that after being placed in his cell, he "began being uncuffed by Officers Barton and Hoag and another officer who's name [Plaintiff] did not know."  *Id*. at 2, 5.  Plaintiff claims that as he was reaching out of the food port to give the officers his free cuff that hung from his wrist, "the officers grabbed the free cuff so hard and pulled with so much force, the top of the food port dug into [Plaintiff's] forearm, leaving a deformity in [his] forearm muscle."  *Id*. at 5.  Plaintiff alleges that the officer violently twisted his wrist as well.  *Id*.

Plaintiff claims that inmate Lee received a disciplinary report for dangerous contraband on this date, showing Officers Barton and Hoag's names on the report.  *Id*.  Plaintiff claims that Megan Davis and Lindsey Wildermuth claimed there was no report of an incident, and Plaintiff claims this was a "lie" and an attempt to cover up.  *Id*.  Plaintiff claims that Lee's disciplinary report also proves that Plaintiff had movement outside of his cell on March 13, 2025.  *Id*.

Plaintiff claims that he was transferred back to the LSCF and upon arriving at the local hospital in Larned, an unknown doctor put yellow markings on his injury on his right forearm.  *Id*. at 5–6.  Plaintiff claims the doctor indicated that he was taking imaging of his forearm and right wrist.  *Id*. at 6.  Plaintiff claims that after the imaging was done, they stated his wrist was normal.

*Id*. Plaintiff claims that when he asked for the results of his forearm imaging he was told they could not find it and then others stated it was normal. *Id*.

Plaintiff claims that EDCF medical staff stated that no imaging existed for Plaintiff's forearm and "that they could see I [sic] muscle displacement." *Id*. Plaintiff states that he believes he needs another MRI and that he does not understand why there is no imaging for his forearm. *Id*. Plaintiff claims that Amy Simmons had to have either changed the order with the doctor that performed the MRI, or she never ordered the imaging. *Id*.

Plaintiff claims that Doctor Ray ordered an MRI for Plaintiff's right forearm and no results exist. *Id*. Plaintiff claims that as of June 23, 2026, he has a visible deformity on his forearm. *Id*. Plaintiff alleges that he went to a sick call at EDCF on June 24, 2026, and APRN Ramsey stated that she investigated the MRI from Larned Hospital and it was done on the wrong area. *Id*. at 7. Plaintiff claims that Amy Simmons knew what area needed to be imaged and "deliberately MRI wrong area/requested wrong area," the administration in Topeka approved the wrong area, and the doctor at Larned Hospital deliberately imaged the wrong area to cover up Plaintiff's injury. *Id*. Plaintiff claims that Ms. Ramsey has ordered a new MRI and "it is pending." *Id*.

As Count I, plaintiff alleges excessive use of force by Officers Barton and Hoag when they pulled Plaintiff's free cuff so hard on March 13, 2025, that the top of the food port dug into Plaintiff's right forearm leaving a deformity. *Id*. at 8.

As Count II, Plaintiff alleges deliberate indifference based on Amy Simmons's failure to order the results or changing the imaging request from the forearm to right wrist. *Id*. Plaintiff alleges that the doctor placed markings around the forearm, and it "was the focal point of his injury." *Id*.

3

As Count III, Plaintiff alleges cruel and unusual punishment based on Officers Barton and Hoag pulling him through the food port by his free cuff, and due to Amy Simmons and medical staff denying Plaintiff medical treatment of his actual injury. *Id*. at 9.

Plaintiff marks "yes" on his Complaint in response to the question as to whether he has brought other lawsuits dealing with the same facts. *Id*. Plaintiff references Case No. 25-3091, and states "same case refiling" and "same except deliberate indifference." *Id*.

Plaintiff names as defendants: Jerry Barton, Correctional Officer ("CO") at LCF; Nathan Hoag, Sort Team CO at LCF; Amy Simmons, Head of Medical Administration at LSCF; (fnu) (lnu) doctor who conducted the MRI at the local Larned Hospital; (fnu) (lnu) (2) Administrative Staff Member, Kansas Department of Corrections ("KDOC"); Megan Davis, Administrative Staff Member, KDOC; and Lindsey Wildermuth, Administrative Staff Member, KDOC. Plaintiff seeks $500,000 in compensatory and punitive damages. *Id*. at 10.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court

4

liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*,

561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### A.  Plaintiff's Prior Case

Plaintiff previously raised claims regarding his medical care and the alleged use of force at LCF.  *See Cheatham v. Howes*, Case No. 25-3091-JWL (D. Kan.).  In that case, Plaintiff's original complaint alleged that Officers Barton and Hoag "snatched [Plaintiff's] right arm through the food slide, after [Plaintiff] stuck [his] arm out to be un-cuffed." *Id*. at Doc. 1, at 2, 4.  Plaintiff alleged that the use of force was unnecessary because he was complying with being uncuffed. *Id*. at Doc. 1, at 4.  He alleged that he was seen by a doctor at LSCF, and it was determined that Plaintiff had an injury to the muscle in his forearm. *Id*. Plaintiff alleged that he was "awaiting a sonogram appointment to confirm Doctor Ray's assessment of [Plaintiff's] injury." *Id*.     Plaintiff filed an amended complaint in which he retained his excessive force claim based on his arm being snatched and twisted through the food slide at LCF, but dropped the remaining claims in his original complaint.

Plaintiff filed a second amended complaint in which he maintained the claim against Barton and Hoag regarding them allegedly snatching his arm through the food port at LCF.  *Id*. at Doc. 34, at 2, 3.  Plaintiff also alleged that his sick call requests were ignored, and he was transferred back to LSCF, where Dr. Ray determined that he had an injury.  Plaintiff claimed that he was awaiting an MRI to confirm Dr. Ray's assessment.  *Id*. at Doc. 34, at 3.[2]  The Court ordered a *Martinez* Report.  The Report included the affidavit of Bryan Wilson, MD.  *Id*. at Doc. 54–2, at 1–3.

In Case No. 25-3091, Plaintiff filed a motion seeking a preliminary injunction, asking the Court to order another MRI of his forearm.  *Id*. at Doc. 58, at 1.  In denying the motion, the Court cited to Dr. Wilson's affidavit, which set forth a non-exhaustive summary of the medical care Plaintiff received after the March incident, as follows:

> 8.  On March 13, 2025, Mr. Cheatham had an emergency response nursing visit due to being found unresponsive on the floor of his cell.  There is nothing in the records that indicate Mr. Cheatham suffered an arm injury, or complained of any arm injury on this date.
>
> 9.  On March 14, 2025, Mr. Cheatham had an Active Therapy visit.  There is nothing in the records that indicate Mr. Cheatham complained of an arm injury during this visit.
>
> 10.  On March 14, 2025, Mr. Cheatham had a dental exam. There is nothing in the records that indicate Mr. Cheatam complained of an arm injury during this visit.
>
> 11.  There is nothing in the medical records that indicate Mr. Cheatham requested medical treatment for any reason or complained of an arm injury on March 15, 2025.
>
> 12.  There is nothing in the medical records that indicate Mr. Cheatham requested medical treatment for any reason or complained of an arm injury on March 16, 2025.
>
> 13.  There is nothing in the medical records that indicate Mr. Cheatham requested medical treatment for any reason or complained of an arm injury on March 17, 2025.
>
> 14.  On March 18, 2025, Mr. Cheatham turned in a sick call request for an injury to his right wrist as a result of force used by a correctional officer.  The sick call request was dated March 14, 2025, but Mr. Cheatham did not turn in the request until March 18,

---

[2] The Court dismissed Plaintiff's unrelated claims regarding an incident at LSCF, noting that Plaintiff had already initiated a new case based on that claim.  *See Cheatham v. Howes*, 2025 WL 3003739, at *2 (D. Kan. Oct. 27, 2025).

7

2025.

15.   Mr. Cheatham should have been aware of the proper procedures for requesting medical care, and he frequently utilizes medical services available to him.

16.   On March 18, 2025, five (5) days after the alleged altercation with correctional officers, was the first time Mr. Cheatham submitted a complaint to the facility regarding his alleged arm injury.

17.   On March 18, 2025, Mr. Cheatham was transferred from LCF to Larned State Correctional Facility.

18.   On March 18, 2025, Mr. Cheatham had a medical consultation due to his facility transfer, which was the first time he mentioned to medical staff that he suffered a right forearm injury due to an altercation with correctional officers at LCF.

19.   On May 21, 2025, Mr. Cheatham underwent an ultrasound of his right upper extremity, which showed normal tissue with no discreet nodules.

20.   On July 22, 2025, Mr. Cheatham underwent an MRI of his right wrist, which showed arthritic changes to his wrist; but there was no acute trauma presented.

21.   There is nothing in the medical records that indicates Mr. Cheatham suffered any fractures to his right wrist or arm, or that he strained or tore any muscles or ligaments in his arm, due to the alleged altercation with correctional officers on March 13, 2025.

*Id*. at Doc. 64, at 2–3.  The Court found that although Plaintiff claimed that there was no follow up by a doctor at EDCF, "[t]his case does not involve claims regarding Plaintiff's medical care at EDCF . . . On March 18, 2025—a few days after the incident—Plaintiff was transferred from LCF to the Larned Correctional Mental Health Facility." *Id*. at 4 (citing Doc. 54–1, at 2.)  The Court found that Plaintiff was transferred to EDCF on September 2, 2025.  *Id*.  Plaintiff filed a Motion for Courts to Obtain New Doctor Findings (Doc. 63), stating that he saw a doctor at EDCF on February 13, 2026, and Dr. Harrad confirmed that Plaintiff sustained an injury to his "forearm" and ordered another MRI.  *Id*. at 11 (citing Doc. 63).

On June 16, 2026, the Court entered a Memorandum and Order granting Defendants Barton and Hoag's motion for summary judgment based on Plaintiff's failure to exhaust his available

8

administrative remedies prior to filing the suit. *Cheatham v. Howes*, 2026 WL 1732960 (D. Kan. June 16, 2026).

### B. Unrelated Claims

Plaintiff's medical claim appears to relate to the care he received at LSCF. Plaintiff attaches his affidavit to his Complaint, where he declares that the next day after the March 13 incident, his arm was extremely swollen and red so he put in a sick call and "was never seen and was transferred back to the Larned Correctional Facility." (Doc. 1–1, at 5.) Plaintiff names Amy Simmons as a defendant and claims that she is the Head of Medical Administration at "the Larned Correctional Facility." (Doc. 1, at 2.) He also names an unidentified doctor who conducted the MRI at the local Larned Hospital. *Id*. at 3. Plaintiff claims that Amy Simmons sent him to see the local doctor. *Id*. Plaintiff acknowledges that he was transferred to LSCF where he "got approved for a[n] MRI by Amy Simmons." *Id*. at 5. He claims he was "seen by medical staff at Larned Correctional after [he] got [his] imaging done and they stated my wrist was normal." *Id*. at 6. He claims that he asked them about the results for his forearm and "they said they couldn't find it, others stated it was normal." *Id*. He claims that staff at EDCF made him aware that there was no imaging for his forearm and they ordered a new MRI that is "pending." *Id*. at 6–7.

Any medical claim based on medical care he received at LSCF appears unrelated to Plaintiff's excessive force claim against LCF Officers Barton and Hoag. Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an amended complaint. Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) ***Defendants***. Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees— for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's*

*Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).  In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences.  Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

### C.  Medical Care

Plaintiff claims that although his wrist and forearm were marked for an MRI, the imaging only covered his wrist.  He acknowledges that another MRI has been ordered for his forearm.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for

11

a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Plaintiff's medical claim suggests, at most, negligence.  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).  Plaintiff should show good cause why his medical claim should not be dismissed for failure to state a claim.

**D.  Defendants Megan Davis and Lindsey Wildermuth**

Plaintiff names Megan Davis and Lindsey Wildermuth as defendants.  Plaintiff's only mention of these Defendants in his Complaint is as follows:

> Megan Davis claims no reports existed of any incident.  I believe she was trying to cover this up.  Lindsey Wildermuth also has stated Plaintiff had no movement outside cell 122 in A4 cellhouse.  This also was a lie as Lee's DR report shows facts that prove Plaintiff had movement outside his cell on March 13, 2025.  Plaintiff believes Administration tryed [sic] covering up this incident.

(Doc. 1, at 5.)

"[T]o state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious*, 492 F.3d at 1163.  Plaintiff does not mention these Defendants in his Counts, and has failed to allege a

12

constitutional violation.  Plaintiff must show good cause why his claims against Defendants Davis and Wildermuth should not be dismissed for failure to state a claim.

## IV.  Motion to Attach Exhibits (Doc. 3)

Plaintiff has filed a motion (Doc. 3) asking the Court to "attach all exhibits filed with Plaintiff's last Complaint" in *Cheatham v. Howes*, Case No. 25-3091-JWL (D. Kan.).   Plaintiff's Second Amended Complaint in Case No. 25-3091 attaches five exhibits, all dealing with exhaustion of his excessive force claim.  *See Cheatham v. Howes*, Case No. 25-3091-JWL, Docs. 34–1, 34–2, 34–3, 34–4, and 34–5.  The Court denies the motion without prejudice to refiling if exhaustion becomes an issue in this case.  The Court is also granting Plaintiff an opportunity to file an amended complaint and he can attach any relevant documents to his amended complaint.

## V.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's claims should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (26-3208-JWL) at the top of the first page of

the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant. If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's claims may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff's motions for leave to proceed in forma pauperis (Docs. 2, 6) are **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Kansas Department of Corrections/Central Inmate Banking to Produce Plaintiff's "Certified Bank Statement" (Doc. 5) is **denied.** Plaintiff must continue his attempts to obtain an account statement for the appropriate six-month period, and he must submit the proper account statement as soon as he is able to do so, at which time an initial partial filing fee may be calculated and assessed.

**IT IS FURTHER ORDERED** that Plaintiff's motion seeking to attach exhibits (Doc. 3) is **denied without prejudice** to refiling if exhaustion becomes an issue in this case.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 24, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

14

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **August 24, 2026**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated July 23, 2026, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**